IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTOPHER MALDONADO,** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 23-CV-3942 |
| | : | |
| **DEPUTY SHERRIFF RANKIN,** | : | |
| Defendant. | : | |

**MEMORANDUM**

**Goldberg, J.**                                                                                              **June 3, 2024**

*Pro se* Plaintiff Christopher Maldonado, an inmate confined at SCI Somerset, commenced this civil action alleging violations of his constitutional rights by Lancaster County Deputy Sheriff Rankin. Currently before the Court are: (1) Defendant Deputy Sheriff Rankin's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 16); (2) Maldonado's Motion in Opposition of Dismissal (ECF No. 20); and (3) Deputy Sheriff Rankin's reply thereto (ECF No. 21). For the following reasons, Rankin's Motion is granted in part and denied in part.

**I.      PROCEDURAL HISTORY**

Maldonado commenced this civil action pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated on October 1, 2023, while incarcerated as a pretrial detainee. (ECF No. 1.) Maldonado claimed that he was subjected to the use of excessive force by Deputy Rankin who escorted Maldonado in the Lancaster County Courthouse. (Compl. at 4-5.)[1] The Court granted Maldonado's application to proceed *in forma pauperis* and conducted a statutory screening of the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). (ECF Nos. 7, 8.) In a

---

[1]      The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

November 8, 2023 Memorandum, the Court determined that Maldonado's allegations concerning the use of force against him were undeveloped because he failed to allege sufficient facts describing the force used and the circumstances under which it was used. (ECF No. 7 at 4.) The Court also dismissed Maldonado's official capacity claim against Deputy Rankin because Maldonado failed to adequately plead such a claim.[2] (*Id.* at 4-6.) Maldonado was granted leave to correct the defects in his claims identified by the Court. (ECF Nos. 7, 8.) He filed an Amended Complaint on November 20, 2023, and the Court directed the Clerk of Court to serve a written waiver request on Deputy Rankin, which was returned executed. (ECF Nos. 9, 10, 14.) Defendant Rankin then moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 16.)

## II.   FACTUAL ALLEGATIONS[3]

Taking the allegations in the Amended Complaint as true, the relevant facts are as follows. Maldonado, who checked the box on the form Amended Complaint indicating that he was a pretrial detainee,[4] alleges that he was subjected to the use of excessive force in violation of the Eighth Amendment. (Am. Compl. at 3.) He claims that while he was being escorted from the holding cell in the basement of the Lancaster County Courthouse on October 1, 2023, at approximately

---

[2]   Maldonado checked the box on the form Complaint to indicate that he asserted his claim against Deputy Rankin pursuant to § 1983 in his official capacity, as well as in his individual capacity. (*See* Compl. at 2.)

[3]   The factual allegations set forth in this Memorandum are taken from Maldonado's Amended Complaint and publicly available dockets. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (courts may consider "matters of public record" in determining whether a pleading has stated a claim).

[4]   A review of the publicly available state court dockets reveals that Maldonado entered a guilty plea on October 2, 2023 and was sentenced on December 1, 2023. *See Commonwealth v. Maldonado*, CP-36-CR-0001010-2022 (C.P. Lancaster); *Commonwealth v. Maldonado*, CP-36-CR-0001066-2023 (C.P. Lancaster).

10:45 to 11:30 a.m., he "did not cuff up with the 2 other inmates." (*Id.* at 4, 5.) As a result, Deputy Rankin came to the holding cell. (*Id.* at 4.) Maldonado describes Deputy Rankin as "angry due to me not wanting to be escorted in a row of 3 inmates." (*Id.*) According to Maldonado, Rankin held Maldonado "by the pants waistline" and escorted Maldonado "very aggressively." (*Id.*) Maldonado contends that he could not move at Deputy Rankin's pace because he had to walk on his tiptoes. (*Id.*) As alleged, Deputy Rankin stepped on Maldonado and Maldonado "paused to get [his] shoe back on close to the van." (*Id.* at 4, 5.) Rankin then slammed him against the side of the van. (*Id.*) Maldonado asserts that Deputy Rankin slammed him into the van because he was angry. (*Id.* at 4.) He further states that "[a]t the end of the escort to the main van I was resistant to being put in the back of the van because I was mad at how he slammed me against the van where there was no camera in that area." (*Id.*) Maldonado asserts that Deputy Sheriff Perez saw the incident. (*Id.* at 5.) As a result of being slammed into the van, Maldonado suffered bruising and scratches on his elbows and was given ice from the medical department for five days to treat swelling. (*Id.*) Maldonado seeks monetary damages for his claims. (*Id.*)

### III.   STANDARD OF REVIEW

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.)  "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).  It is the defendant's burden to show that a complaint fails to state a claim. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  To determine whether a complaint filed by a *pro* se litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed contains facts sufficient to state a plausible . . . claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (*pro se* filings are construed liberally).

**IV.   DISCUSSION**

Maldonado brings his claims against Deputy Rankin pursuant to is 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court.  Section "1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotations omitted).  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

4

To plead a § 1983 claim against a municipal entity, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).

### A.     Excessive Force Claim

Deputy Rankin moves to dismiss Maldonado's excessive force claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* ECF No. 16.) Citing to *Hudson v. McMillian*, 503 U.S. 1, 6 (1992), Rankin argues that when a pretrial detainee alleges that excessive force was used by a corrections officer, the court must examine "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." (ECF No. 16-1 at 3.) He further avers that an excessive force claim brought under the Fourteenth Amendment's Due Process clause is analyzed under the same standard as an excessive force claim brought under the Eighth Amendment. (*Id.* at n.3.) In analyzing an Eighth Amendment excessive force claim, a court must consider several factors addressed in *Hudson*, including: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by prison officials; and (5) any efforts made to temper the severity of a forceful response. *See Hudson*, 503 U.S. at 7. Rankin asserts that when the *Hudson* factors are applied, Maldonado's Amended Complaint fails to establish an excessive force claim against him. (*Id.* at 4-6.) Rankin argues that the force applied was needed because Maldonado refused to be handcuffed to two other inmates when being escorted; moving Maldonado on his tiptoes at a fast pace was not excessive and slamming Maldonado into the van, even if in anger, was a result of Maldonado's own conduct; the threat to Deputy Sheriff Rankin was high because he had to restore order over a noncompliant

Maldonado; and the use of force, shoving Maldonado into the side of the van, was to no avail because it only angered Maldonado who further resisted being put into the back of the van. (*Id.*)

Rankin's reliance on Eighth Amendment considerations is inapposite. Maldonado's claim does not arise under the Eighth Amendment. Excessive force claims brought by convicted prisoners are analyzed under the Eighth Amendment's Cruel and Unusual Punishment Clause, while claims brought by pretrial detainees are analyzed under the Fourteenth Amendment's Due Process Clause. *See Kingsley v. Hendrickson*, 576 U.S. 389, 400-01 (2015); *Jacobs v. Cumberland Cty.*, 8 F.4th 187, 193-94 (3d Cir. 2021). The distinction is significant because the "language of the two Clauses differs, and the nature of the claims often differs." *Kingsley*, 576 U.S. at 400. When a convicted prisoner brings an Eighth Amendment excessive force claim against a prison official, the court must consider "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). The malicious-and-sadistic standard for an Eighth Amendment claim is subjective, but an objective standard is applied to a Fourteenth Amendment claim. *See Kingsley*, 576 U.S. at 400 (explaining that the reason for the lesser standard in a Fourteenth Amendment claim is that "pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically'"); *Jacobs*, 8 F.4th at 194 ("In 2015, the Supreme Court clarified that the subjective Eighth Amendment standard does not apply to pretrial detainees.").

To state a Fourteenth Amendment claim, a pretrial detainee "must show only that the force purposely or knowingly used against him was objectively unreasonable." *See Kingsley*, 576 U.S. at 396-97. "Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper

6

or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* at 397; *see also Robinson v. Danberg*, 673 F. App'x 205, 209 (3d Cir. 2016) ("To demonstrate a due process violation, a detainee must prove that the force purposely or knowingly used against him was objectively unreasonable, meaning that the actions [were] not rationally related to a legitimate nonpunitive governmental purpose.") (internal quotations omitted, alteration in original). Whether unreasonable force has been used against a detainee "requires careful attention to the facts and circumstances of each particular case." *Jacobs*, 8 F.4th at 194 (internal quotation omitted). Courts should analyze "these circumstances 'from the perspective of a reasonable officer on the scene'" while keeping in mind that decisions about force require the expertise of correctional officers, "'who must have substantial discretion to devise reasonable solutions to the problems they face.'" *Id.* at 195 (quoting *Kingsley*, 576 U.S. at 397, 399).

Deputy Rankin's motion to dismiss the excessive force claim will be denied. Despite acknowledging Maldonado's status as a pretrial detainee, Rankin's motion incorrectly applies the Eighth Amendment standard and does not apply the *Kingsley* analysis. Furthermore, Rankin argues that the force used was justified, at least in part because "any alleged anger by Deputy Rankin was a result of Plaintiff's own conduct for refusing to be handcuffed and escorted like the other two . . . inmates." (ECF No. 16-1 at 4.) However, "[t]he touchstone of a due process claim is whether the application of force was punitive." *Robinson*, 673 F. App'x at 210 (citation omitted).

According to Maldonado, Rankin held him "by the pants waistline," escorted him "very aggressively" causing Maldonado to walk on his tiptoes to keep up with Rankin, and after Rankin stepped on his shoe, Maldonado "paused to get [his] shoe back on close to the van." (*Id.* at 4, 5)

7

Deputy Rankin is alleged to have then slammed the handcuffed Maldonado into the side of the van. (*Id.*) Accepting Maldonado's allegations as true and drawing all reasonable inferences in his favor as the Court must at this stage of the litigation, the Amended Complaint plausibly alleges that the force used against Maldonado in slamming him into the side of the van was objectively unreasonable under the circumstances.

Maldonado has alleged sufficient facts to survive the motion to dismiss his excessive force claim. *See, e.g., Villafana v. Morgan*, No. 22-cv-4454, 2024 WL 1006260, at *2 (D.N.J. Mar. 8, 2024) (pretrial detainee who alleged that officer put him in a choke hold and stomped on his calf for no reason was permitted to proceed past statutory screening); *Harrell v. Mayer*, No. 22-cv-0730, 2023 WL 6465415, at *8 (M.D. Pa. Sept. 29, 2023) (denying motion to dismiss pretrial detainee's excessive force claim and finding that a developed factual record was necessary to determine whether the defendant's use of force was objectively unreasonable under the circumstances); *White v. Frey*, No. 22-cv-1173, 2023 WL 4748180, at *1 (M.D. Pa. July 25, 2023) (denying motion to dismiss pretrial detainee's excessive force claim based on allegation that prison guard "charged him into the desk . . . and then slammed him onto the desk, hit him in the head and started chocking [sic] him"); *Giddings v. Rogers*, No. 22-cv-0097, 2023 WL 2395470, at *6 (M.D. Pa. Mar. 6, 2023) (denying motion to dismiss pretrial detainee's excessive force claim based on allegation that, while handcuffed in an elevator and "causing no threat" to corrections officer, plaintiff was deliberately elbowed in the back of his head by defendant, and allowing claim to proceed to discovery). Accordingly, the Court will allow Maldonado's excessive force claim to proceed to discovery for development of the factual record to determine whether the force used against him was objectively unreasonable.

### B.     Official Capacity Claim

Maldonado once again checked the box on the form Amended Complaint to indicate that he asserts his claim against Deputy Rankin pursuant to § 1983 in his official capacity, as well as in his individual capacity. (*See* Am. Compl. at 2.)  As noted in the Court's November 8, 2023 Memorandum, official capacity claims are indistinguishable from claims against the entity that employs the officials.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell*, 436 U.S. at 690 n.55).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*  Thus, Maldonado's claim against Deputy Rankin in his official capacity is, in essence, a claim against Lancaster County.

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *Monell*, 436 U.S. at 694.  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).  "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  It is not enough, however, to allege the existence of a policy or custom.  "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Id.* (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).  This can be done "by demonstrating an 'affirmative

9

link' between the policy or custom and the particular constitutional violation" alleged. *Id.* (quoting *Bielevicz*, 915 F.2d at 850). Allegations that simply paraphrase the standard for municipal liability are too vague and generalized to support a plausible claim. *See, e.g., Szerensci v. Shimshock*, No. 20-cv-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*." (citing cases)).

To the extent Maldonado seeks damages from Deputy Rankin in his official capacity, he once again has failed to allege facts that support *Monell* liability. Indeed, Maldonado's Amended Complaint is silent on this issue. He has not pled a municipal policy or custom with respect to the alleged constitutional violations, that such policy or custom caused the constitutional violations, or municipal failures amounting to deliberate indifference. Accordingly, any official capacity claim against Deputy Rankin is not plausible as alleged. The Motion to Dismiss will be granted as to Maldonado's official capacity claim.

## V. CONCLUSION

For the foregoing reasons, the Deputy Rankin's motion to dismiss will be granted in part and denied in part. The motion will be granted with respect to Maldonado's official capacity claim, and will be denied in all other respects. Deputy Rankin will be required to respond to the Amended Complaint in accordance with Federal Rule of Civil Procedure 15(a)(3).[5]

---

[5] Because Maldonado's "Motion in Opposition of Dismissal" (ECF No. 20) is properly construed as his response to the motion dismiss, the "Motion in Opposition of Dismissal" will be terminated.